IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CREATIVE PULTRUSIONS INC., | ) | Case No. 3:18-cv-256 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COOPER B-LINE, INC., D/B/A EATON B-LINE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Defendant Cooper B-Line, Inc., d/b/a Eaton B-Line's ("Defendant") Motion for Partial Judgment on the Pleadings against Plaintiff Creative Pultrusions, Inc. ("Plaintiff"). (ECF No. 41.) The Motion has been fully briefed and is ripe for disposition. (*See* ECF Nos. 42, 45, 49.)

This case arises from a dispute over the legal effect of two agreements between the parties—a 1998 Partnership Agreement (the "1998 Agreement") and a 2005 Private Labeling Agreement (the "2005 Agreement"). Plaintiff argues that the 1998 Agreement is still operative and notes that, under the 1998 Agreement, it had the exclusive right to manufacture certain cable tray and strut products (the "Products") for the parties. Further, Plaintiff contends that Defendant breached the exclusivity provision in the 1998 Agreement by contracting with another party to produce the Products in or around December 2017. On the other hand, Defendant argues that the 2005 Agreement, which called for Plaintiff to manufacture the Products but did not grant Plaintiff the exclusive right to do so, superseded the 1998 Agreement, discharging Defendant's

obligations under the earlier contract. Accordingly, Defendant filed its motion for Partial Judgment on the Pleadings, asking this Court to determine the legal status of the two agreements.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Partial Judgment on the Pleadings. (ECF No. 41.)

## II. Jurisdiction and Venue

The Court has subject matter jurisdiction over this case because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. (*see* ECF No. 4 ¶¶ 11–13; ECF No. 13 ¶ 12–13.) Venue is proper in the Western District of Pennsylvania because the Western District of Pennsylvania embraces Bedford County, where Plaintiff originally filed suit in state court. 28 U.S.C. § 1441(a).

## III. Background

### A. Factual History

The following facts are undisputed unless otherwise noted.[1]

In June of 1998, Plaintiff and Defendant entered into a Partnership Agreement for the exclusive manufacture, marketing, and sale of the Products. (ECF No. 1-1 (Compl.) ¶ 1.) Under the 1998 Agreement, Plaintiff was the exclusive manufacturer of the Products. (*Id.* ¶ 9.) Defendant designed and had the exclusive right to market the Products. (*Id.* ¶¶ 9–10.) The 1998 Agreement provided that Plaintiff manufacture the Products for the partnership at its cost, and that Defendant design and market the Products for the partnership at its cost. (*Id.* ¶ 10.) The parties divided the earnings of the partnership on a 50/50 basis at the end of each quarter. (*Id.*)

---

[1] The Court derives these facts from the Complaint (ECF No. 1) and the Answer (ECF No. 4), as it is required to do when assessing a motion for judgment on the pleadings.

The 1998 Agreement contained an initial term, first renewal period, and automatic renewal period. (*Id.* ¶ 11.) The initial term ended on June 30, 2001. (*Id.*) The 1998 Agreement allowed Defendant to extend the partnership for three years (the "First Renewal Period") by giving Plaintiff a notice of renewal six months prior to the end of the initial term. (ECF No. 1-1 (Ex. A) ¶ 7.) Once Defendant provided Plaintiff with such notice, the 1998 Agreement would extend to June 30, 2004, the end of the First Renewal Period. (*See id.*) Following the First Renewal Period, the 1998 Agreement would continue to renew automatically every three years, unless one party provided notice of non-renewal to the other party twelve months prior to the beginning of the next renewal term. (*Id.*)

On May 1, 2005, the parties entered into the Private Labeling Agreement, which also concerned the manufacture, marketing, and sale of the Products. (ECF No. 4-1.) The 2005 Agreement began with paragraphs explaining that Plaintiff manufactured cable tray and strut products, and Defendant marketed and sold the Products. (*Id.* ¶ 1.) The 2005 Agreement then stated that the parties wanted both Plaintiff and Defendant to have the exclusive right to distribute and sell the Products. (*Id.*) Accordingly, under the 2005 Agreement, Plaintiff would continue to manufacture the Products and would supply some to Defendant at Plaintiff's cost. (ECF No. 4-1 ¶ 2.1; Ex. C.) The parties would both market and sell the Products independently and split the profits from such sales on a 50/50 basis. (ECF No. 4-1 ¶¶ 1.3–2.4.)

The 2005 Agreement contains the following integration clause: "[t]his Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof ... [t]his Agreement supersedes any and all previous agreements between the parties with respect to the subject matter hereof, whether written or oral." (*Id.* ¶ 11.5.) Finally, the 2005

Agreement allows either party to terminate the agreement by providing the other party with ninety days' written notice. (*Id.* ¶ 9.1.)

According to Plaintiff, in or around December of 2017, Defendant entered an agreement with someone other than Plaintiff to source the Products. (ECF No. 1-1 ¶ 16.) Plaintiff contends that the 1998 Agreement, including the provision granting Plaintiff the exclusive right to manufacture the Products for the partnership, was still in effect in 2017, putting Defendant in breach of contract. (*Id.* ¶¶ 16–18.)

### B. Procedural History

Plaintiff initiated this lawsuit by filing a Complaint in the Bedford County Court of Common Pleas on November 18, 2018. (ECF No. 1.) Plaintiff seeks a declaratory judgment that the 1998 Agreement is still in effect. (*Id.* ¶ 35.) Plaintiff also seeks judgments against Defendant for breach of contract and unjust enrichment. (*Id.* ¶¶ 36–44.)

Defendant removed the action to this Court by filing a Notice of Removal in state court on December 14, 2018. (ECF No. 1.) On December 20, 2018, Defendant filed an Answer to Plaintiff's Complaint, asking the Court to deny Plaintiff's claims for declaratory judgment, breach of contract, and unjust enrichment. (ECF No. 4 (Ans.) ¶¶ 31–44.) Further, Defendant filed a Counterclaim, seeking a judgment against Plaintiff for breach of contract, or in the alternative, unjust enrichment; a judgment against Plaintiff for conversion; and, finally, a declaratory judgment that the 2005 Agreement superseded the 1998 Agreement. (ECF No. 4 (Countercl.) ¶ 38–73.) Plaintiff filed an Answer to the Counterclaim on January 10, 2019. (ECF No. 13.)

On June 20, 2019, Defendant filed this Motion for Partial Judgment on the Pleadings, asking the Court to dismiss Plaintiff's First Claim for declaratory judgment and grant Defendant's

Fourth Claim in its Counterclaim for declaratory judgment. (ECF No. 41.) The briefing and responses on this motion concluded on July 30, 2019. (ECF Nos. 42, 45, 49.)

## IV. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Rule 12(c), a court will not grant judgment unless the movant clearly establishes that no issue of material fact remains to be resolved and that the party is entitled to judgment as a matter of law. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Courts must view the facts presented in the pleadings, and the inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Id.* (quoting *Rosenau*, 539 F.3d at 221). The facts presented in the pleadings include those from exhibits attached to the pleadings. *See* Fed. R. Civ. P. 10(c).

## V. Discussion

### A. The Parties' Arguments

Defendant argues that the 1998 Agreement merged into the 2005 Agreement due to the integration clause in Section 11.5 of the 2005 Agreement. (ECF No. 42 at 8.) Defendant notes that Pennsylvania courts typically consider integration clauses to be clear signs that the writing expresses the parties' entire agreement, in which case the parol evidence rule bars evidence of any previous written agreements involving the same subject matter. (*Id.*) Therefore, for an agreement to invoke the parol evidence rule, it must: (1) express the entire agreement between the parties and (2) relate to the same subject matter as the previous agreement. (*Id.* at 8–9.)

Defendant argues that the integration clause found in Section 11.5 establishes that the 2005 Agreement expresses the "entire agreement" of the parties because of the plain language of that clause, which states: "[t]his Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof." (ECF No. 4-1 ¶ 11.5.) Defendant also argues that, because the 1998 and 2005 Agreements both pertain to the manufacture, marketing, and sale of the Products, they relate to the same subject matter. (ECF No. 42 at 10.) Accordingly, Defendant asserts that the integration clause bars consideration of the 1998 Agreement under the parol evidence rule, meaning that the 2005 Agreement is the only operative agreement between the parties. (*Id.* at 11–12.)

Plaintiff argues that the 1998 Agreement and 2005 Agreement pertain to different subject matters, and that the 1998 Agreement is therefore still operative for two reasons. (ECF No. 45 at 9–12.) First, the 1998 Agreement governs Plaintiff's exclusive rights to manufacture the Products and Defendant's exclusive rights to market the Products, whereas the 2005 Agreement governs Plaintiff's marketing and sale of certain of the Products. (*Id.* at 10.) Second, Plaintiff asserts that the 1998 Agreement governs Plaintiff's provision of the Products to the partnership, while the 2005 Agreement governs Plaintiff's provision of the Products to Defendant. (*Id.* at 11.) In short, Plaintiff's argument is that the 1998 Agreement governed Plaintiff's exclusive rights to manufacture the Products and Defendant's exclusive rights to sell the Products, while the 2005 Agreement was a separate agreement in which the parties stipulated that Plaintiff could sell some of the Products that were already being manufactured and sold under the 1998 Agreement. (*Id.* at 11–12.)

Finally, Plaintiff notes that the integration clause in the 2005 Agreement did not mention the 1998 Agreement, indicating that the parties were only excluding preliminary negotiations leading up to the 2005 Agreement, not the 1998 Agreement, which had been in place for approximately seven years. (*Id.* at 10–11.)

### B. Pennsylvania Law Applies to the Agreements

In federal diversity cases, a federal court must apply the conflict of law rules of the forum state in which it sits, in this case, Pennsylvania. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). The Third Circuit has noted that Pennsylvania courts apply the test established in *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805–06 (Pa. 1964), to conflicts over which jurisdiction's laws govern the interpretation of a contract. *Hammersmith v. TIG Ins. Co.* 480 F.3d 220, 231 (3d Cir. 2007). Under the *Griffith* test, if the laws of two jurisdictions are the same, then there is no conflict at all, and a choice of law analysis is unnecessary. *Hammersmith*, 480 F.2d at 230. Thus, the first part of the inquiry is whether there is "an *actual* or *real* conflict between the potentially applicable laws." *Id.* Moreover, the Third Circuit has held that if parties focus their briefing on the law of the forum rather than the law of the jurisdiction chosen by the choice of law provision, and if there is no actual conflict between the two, then courts may "assume" that the parties do not rely on any distinctive feature of the law chosen by the choice of law provision, and may apply the law of the forum. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

Here, the 1998 Agreement does not contain a choice-of-law provision, but the 2005 Agreement does. (ECF No. 4-1 ¶ 11.8.) The 2005 Agreement stipulates that: "[t]his Agreement shall be construed, interpreted and applied in accordance with and governed by the laws of the

State of Texas." (*Id.*) However, both parties cite to Pennsylvania law throughout their briefing on this motion (*see* ECF Nos. 42, 45, 49), and agree that it applies to the claims in this suit. (ECF No. 42 at 7; ECF No. 45 at 8.) Further, the Court finds that there is no real or actual conflict between Pennsylvania and Texas law. Therefore, because both parties focus their briefing on Pennsylvania law and the Court finds no actual conflict between Pennsylvania and Texas law, the Court holds that Pennsylvania contract interpretation law applies to this Motion.

### C. The 2005 Agreement Superseded the 1998 Agreement as a Matter of Law

The Third Circuit has held that determining whether a contract is an integrated agreement that implicates the parol evidence rule is a matter of law properly decided by the court rather than a jury. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 994–95 (3d Cir. 1987). Because questions of contract integration are a matter of law, this Court can properly decide whether the 2005 Agreement superseded the 1998 Agreement at this stage in the litigation.

Pennsylvania contract law provides that once a court deems a writing to be the parties' entire contract, "the parol evidence rule applies and evidence of any previous . . . written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436–37 (Pa. 2004). A written agreement must therefore satisfy two requirements in order for the parol evidence rule to apply and bar consideration of a previous agreement: (1) the written agreement must represent the entire contract between the parties and (2) the written agreement must pertain to the same subject matter as the previous agreement. *Palermo Gelato, LLC. v. Pino Gelato, Inc.*, No. 2:12-cv-00931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013) (quoting *Atl. Pier Assocs. LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 486 (E.D. Pa. 2009)).

### 1. The 2005 Agreement Is the Entire Contract

The Pennsylvania Supreme Court has held that an integration clause stating that a writing is the parties' entire agreement is a clear sign that the writing is in fact the parties' entire agreement, encompassing all the previous negotiations and agreements between the parties. *Yocca*, 854 A.2d at 436.

Here, the 2005 Agreement contains the following integration clause: "[t]his Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and . . . [t]his Agreement supersedes any and all previous agreements between the parties with respect to the subject matter hereof, whether written or oral." (ECF No. 4-1 ¶ 11.5.) This integration clause states that it is the entire agreement between the parties. Therefore, the clause is clear evidence that the 2005 Agreement was the entire contract between the parties with respect to its subject matter, and Defendant has met the first element.

### 2. The 2005 Agreement Relates to the Same Subject Matter as the 1998 Agreement

The Pennsylvania Supreme Court has held that the written contract need not directly contradict the prior agreement, it must only "relate to subjects that were specifically addressed in the [prior] written contract." *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995). In *McGuire*, the Pennsylvania Superior Court ruled that two contracts need not have identical terms in order to pertain to the same subject matter. *McGuire v. Schneider, Inc.*, 534 A.2d 115, 116–18 (Pa. Super. Ct. 1987), *aff'd mem.* 548 A.2d 1233 (Pa. 1988) (per curiam). The court held that a letter and a subsequent employment agreement that both related to compensation, bonuses, fringe benefit programs, and terms of employment related to the same subject matter, even

though the subsequent employment agreement contained terms less favorable to the employee. *Id.*

Here, the parties agree that the 1998 Agreement and 2005 Agreement both pertain to the Products. Further, an examination of the 1998 Agreement and the 2005 Agreement shows that both pertain to the manufacture, marketing, sale, and distribution of profits from the Products. The two agreements simply change the parties' rights with respect to the Products by removing Plaintiff's exclusive right to manufacture the Products, and giving Plaintiff the right to market and sell the Products through certain channels. Therefore, just as the letter and employment contract in *McGuire* pertained to the same subject matter, namely compensation, bonuses, fringe benefit programs, and terms of employment, despite the fact that the terms of employment were different in the employment contract than in the letter, so the 1998 Agreement and the 2005 Agreement pertain to the same subject matter, namely the manufacture, marketing, sale, and distribution of profits from the Products, despite the fact that the terms of marketing and sale are different in the 2005 Agreement than in the 1998 Agreement.

Moreover, the fact that the 2005 Agreement did not explicitly mention the 1998 Agreement does not change this Court's analysis. As the Pennsylvania Superior Court held in *McGuire*, if parties want to be able to rely on a prior agreement when forming a new agreement containing an integration clause, they must protect themselves by incorporating the prior agreement into the new agreement. *McGuire*, 534 A.2d at 119–20. Because Plaintiff did not protect itself by incorporating the 1998 Agreement into the 2005 Agreement, the fact that the 2005 Agreement does not mention the 1998 Agreement does not bar application of the parol evidence rule.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 41) is granted.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CREATIVE PULTRUSIONS INC., | ) | Case No. 3:18-cv-256 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COOPER B-LINE, INC., D/B/A EATON B-LINE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

NOW, this 12th day of November, 2019, upon consideration of Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 41) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 41) is **GRANTED**. Accordingly, judgment is entered in favor of Defendant on Count Four of Defendant's Counterclaim and Plaintiff's First Claim for Relief is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE